## HELPHENSTINE *v.* DOWNEY.

CONTRACTS, ACTIONS FOR BREACH OF; EVIDENCE OF VALUE OF
GOOD WILL OF BUSINESS; QUESTIONS FOR JURY; DAMAGES.

1. In an action to recover damages for the breach by the vendor of a
   covenant in a contract of sale of a business, not to engage in a
   similar business within a certain territory, testimony offered by
   the plaintiffs that the vendor at the time of the sale estimated his
   stock in trade to be worth $8,000 while the purchase price was
   $14,000, is admissible for the purpose of showing the value of
   the patronage and good will of the business.
2. In such a case, where the defence was that the defendant had merely
   advanced money to his son and another to engage in the new
   business, it was *held* that while no one of the circumstances ad-
   duced was perhaps sufficient to show that he was the real owner
   of the business, taken together they made out a sufficient case
   to go to the jury, even had there been no proof of actual damages.
3. It is not necessary in such a case, although the declaration alleges a
   loss of customers to the extent of one hundred, that the plaintiffs,
   before they can be entitled to any damages on account of such
   loss, should show specifically and by name what customers were
   actually lost to them.
4. Refusal by the plaintiffs, in such a case, after the commencement of
   the suit to pay a promissory note representing a part of the pur-
   chase price of the business purchased from defendant, upon
   the ground that he had broken the contract, will not put an end
   to the contract between them so as to preclude a recovery of
   damages for its breach.

No. 484.  Submitted October 25, 1895.  Decided December 3, 1895.

HEARING on an appeal by the defendant from a judgment on verdict in an action to recover damages for a breach of a contract not to engage in a certain business within a prescribed territory. *Affirmed.*

The COURT in its opinion stated the case as follows :

This is a suit at law instituted in the Supreme Court of the District of Columbia to recover damages for an alleged breach of a contract. not to enter into a certain business within a certain radius in the city of Washington.

On January 30, 1890, and for some years prior thereto, the appellant, Rufus K. Helphenstine, was engaged in the drug business, conducting a drug store for that purpose at the corner of Fourteenth street and Vermont avenue, known as "The Portland Drug Store." On the day mentioned he sold the stock of goods in the store and the business to the appellees, William C. Downey and Frederick S. Smith, for the sum of $14,000, part in cash, and part in promissory notes secured by deed of trust upon the stock and fixtures in the store. There were four notes, due respectively in one, two, three and four years from the date of sale. In the contract and as part of the consideration for it, there was an agreement on the part of the appellant, that for the period of five years he would neither directly nor indirectly engage in the drug business in the city of Washington, D. C., within a radius of ten squares of the Portland drug store, without first obtaining the written consent of the appellees.

In or about the month of December, 1891, a drug store was opened in the Cochran Hotel, on the corner of Fourteenth and K streets, which was within two blocks of the Portland drug store, under the sign of " Helphenstine & Cluss," without any indication as to the identity of the Helphenstine of the firm. Cluss, it seems, had been a clerk in the Portland store, in the service first of the appellant, and afterwards and up to about the time of the opening of the new store, in the service of the appellees, and a young

man wholly without means.    The appellant, it was conceded, was concerned in the opening of the new store; but he claimed that the Helphenstine of the firm was his minor son, Edgar Helphenstine, then about nineteen years of age, and that his only interest was to set up the young men in business.    He admitted that he lent them all the money required for the opening of the establishment; but stated that he took notes therefor and a deed of trust to secure them upon the stock and fixtures of the store.

The appellees considered that the new store belonged to the appellant, and that he had established it for his own benefit, in violation of his express contract with the appellees.    Thereupon, on April 13, 1892, they instituted the present suit to recover damages from him for such violation of the contract and for the loss of patronage claimed by them to have been occasioned by it.

Their declaration contained four counts, in which their cause of action was set forth with some variation.    In the first it was not alleged that the defendant's engaging in the business in the new store was without the consent of the appellees; and in the third and fourth counts there was an allegation of the loss of a large number of customers, stated under a *videlicet* to amount to one hundred.    The pleas interposed by the defendant amounted to the general issue.

At the trial there was testimony on the part of the plaintiffs to show that the defendant had solicited the lease of the premises, wherein the new store was established, for himself and in his own name; that he had directed the workmen in fixing up the place, had ordered the gas fixtures, directed the plumbing, given the directions for the purchase of the medicines, and practically selected the whole outfit of the establishment; that he assisted at the store and gave directions there in regard to sales; that the books of the store were kept at his house; that his son had no means of his own; that there was no change in the management of the business or in the settlement of accounts in

consequence of the death of Cluss, which occurred in October, 1894, &c., and there was also testimony tending to show loss of patronage to the Portland store by the use of the name of Helphenstine in the new establishment and the diversion to that establishment of some of the business of the Portland store. In this connection the names were specified of several persons, hotels and boarding-houses, former customers of the Portland store, whose dealings therewith had ceased or had been greatly diminished upon the opening of the new store in the Cochran Hotel.

The defendant, in his testimony, conceded that he had advanced the money to establish and fit up the new store ; but stated that he took notes and a deed of trust therefor, which, however, had never been paid. And the purport of the evidence on his behalf was to show that his whole interest in the premises was his natural desire to set up his son and his young friend in business, and that his course of action was entirely in accordance with this theory.

In the course of the testimony on behalf of the plaintiffs it was sought to be shown by the plaintiffs themselves, that, at the time of the sale of the Portland store to them by the appellant, the latter estimated the value of the stock in that store at $8,000—the evident intention being thereby to show that the residue of the purchase price of $14,000, that is about $6,000, represented, according to the understanding and agreement of the parties, the value of the patronage or good will of the business, for the protection and assurance of which to the appellees the covenant of the appellant had been made that he would not again engage in the drug business under the limitation specified in the contract. To this testimony objection was made on the ground that no fraud had been charged in the matter of the price fixed as the consideration to be paid by the appellees. But the testimony was admitted ; and exception was noted by the defendant. Upon two exceptions thus taken, two assignments of error, the first and second, are now based.

At the conclusion of the whole testimony, there was a

motion made by the defendant to direct a verdict in his favor. This was overruled; and upon the ruling of the court in that regard the appellant has based his third assignment of error.

Counsel for the defendant then submitted nine prayers for instructions to the jury, of which four were given and five refused. Of the five that were refused, only two are here made the subject of assignment of error, and the others must, therefore, be regarded as having been abandoned. The two, which are brought here for consideration and upon which the fourth and fifth assignments of error are founded, are as follows:

"8. Before the jury can assess damages on account of the loss of customers, they must be satisfied from the evidence what customers were lost, and that such loss was due to the violation of the contract by the defendant, and proximately, at least, the amount of loss sustained by the plaintiffs on that account.

"9. If the jury find from the evidence that the plaintiffs have failed and refused to keep and perform their part of the contract with the defendant, in whole or in part, they are not entitled to recover in this action."

The court then charged the jury of his own motion; but no exception was taken to any part of the charge.

The jury rendered a verdict for the plaintiffs in the sum of $5,000; and from the judgment thereon the defendant appealed.

*Mr. Henry E. Davis* and *Mr. James F. Smith* for the appellant.

*Mr. A. S. Worthington* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

1. As we have indicated, there are five assignments of error, of which the first and second are substantially the same, and may be considered together. They are ad-

dressed to the matter of the value placed by the parties at
the time of the sale upon the patronage of the Portland
store, which practically meant the same as the good will of
the business. We do not understand that the testimony to
which objection was made was sought to be introduced for
the purpose of varying the written contract, as we might
infer was understood or supposed at the time by the attor-
ney for the defendant in view of the character of his objec-
tion ; nor do we understand that it was intended thereby to
establish that value as the measure of damages for the vio-
lation of the agreement—although there might well be
cases where it could properly serve that purpose. The
testimony was clearly admissible for the purpose of show-
ing the value of that which had been injured, if injury
there was, by the unlawful action of the defendant. Possi-
bly it was not entitled to much weight in the determination of
the issue ; but that was for the jury. It was evidently the ele-
ment of the patronage of the Portland store, or the good
will of its business, that was measured in the contract of
the parties, in whole or in part, against the covenant of the
defendant that he would not engage in a rival business, that
would have the tendency to destroy it, and the value of the
one was undoubtedly a proper preliminary to be shown in
the investigation of the damage done by the other. The
case does not greatly differ in principle from one of tres-
pass upon property, where it is proper to show the value of
the property before and after the trespass, so as to deter-
mine the pecuniary equivalent of the damage done by the
trespass.

We are of opinion that these exceptions are not well
taken.

2. The third error assigned by the appellant is the re-
fusal of the trial court to direct a verdict in his favor. We
cannot regard that refusal as error. The theory of the
appellant's motion must necessarily have been, either that
the plaintiffs had wholly failed to adduce any testimony
that tended to show that the defendant had directly or in-

directly engaged in business in violation of his contract, or else that they had proved no damage therefrom to themselves.    But both positions are untenable.

An appellate tribunal should always be reluctant to revise the decision of a trial court in submitting testimony to a jury.    It will certainly not interfere with that decision unless a very clear case is shown for its intervention ; for the matter of the mere preponderance of testimony is not for an appellate court.    But we think the court below was entirely right in refusing the appellant's motion and submitting the issues to the jury.

The gist of the declaration was that the appellant had indirectly engaged in the drug business in violation of his contract.    It is not to be supposed that he would have engaged in business openly in his own name in flagrant and avowed violation of his agreement.    If it was his purpose to engage in business in opposition to the contract, he would naturally have sought to do so indirectly, and to accomplish his purpose by some such scheme as that which is outlined in this record.    Direct proof in such cases is generally difficult, often impossible.    It is indirection that was charged here ; and of indirection very generally the only available proof is that by inference from circumstantial evidence.    No one, perhaps, of the circumstances adduced in the case against the appellant was sufficient, standing alone, to justify the conclusion that he was the real owner for his own benefit of the new drug store in the Cochran Hotel ; but when they are taken altogether, while reasonable men may differ as to the inference to be drawn from them, that very fact necessitates that they should be submitted to the arbitrament of a jury.    And if there was sufficient evidence to go to the jury upon the question whether the appellant had engaged in business in violation of his contract, the appellant's motion to direct a verdict should not have been allowed, even if there had been no proof whatever of actual damages.    For in the event that the jury should find, as they actually did find, that he had so en-

gaged in business, the plaintiffs were necessarily entitled in any case to nominal damages.

We do not think that the third assignment of error can be sustained.

3. Nor do we find the fourth and fifth assignments any more tenable.

The defendant's eighth prayer for instruction to the jury, upon the refusal of which the fourth assignment is based, contemplates that the plaintiffs, before they can be entitled to any damages on account of the loss of customers, must show specifically and by name what customers were actually lost to them. We know of no foundation in reason or in authority for such an instruction.

It is quite true, in this class of cases, as in all others, that to justify a verdict for actual damages, actual damages must have been alleged and must have been proved. In the third and fourth counts of the declaration in this case loss of customers to the extent of one hundred was alleged. Of course, it was not necessary to prove that precise number, or any other specific number; but to sustain the allegations some proof of loss of custom was necessary. That proof might well be by showing a diminished number of customers at the Portland store after the opening of the new establishment and in consequence of that establishment. But to point out specifically the customers who were lost might be impossible. Several were actually pointed out by the plaintiffs in their testimony; but the element of damage, after all, is the number of customers and the amount of custom lost, and the names of the customers are a matter of no consequence in the final determination of the issue. Nor, if the finding of the jury was right, that the appellant did engage in business in violation of his contract, can he justly complain of the indefiniteness almost of necessity incidental to the subject-matter of the controversy; for it is to his own action that it is due.

The ninth prayer for instructions requested by the defendant is wholly without merit. The alleged failure of

performance of the contract by the plaintiffs to which it refers, is their refusal, long after this suit was begun, to pay the last promissory note given by them for the purchase money of the Portland store. It is conceded by the appellant that the mere failure to pay the note would not terminate the contract; but it is suggested that a refusal to pay it on the ground that the contract had been broken by the other party put an end to the contract as to both parties. This point, however, is not seriously pressed; and we cannot think that it requires any consideration from us. We find no error in the rulings of the court below; and the judgment must be affirmed, with costs. *And it is so ordered.*